**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CARISA WALKER,

     Plaintiff,                         CASE NO.:

    v.

                                    *Plaintiff Demands a Trial by Jury*

CVS PHARMACY, INC., and KIMBERLY
HARRIS, *individually*

     Defendants,

-----------------------------------------------------------------

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff CARISA WALKER (hereinafter referred to individually as "Plaintiff" and/or "Ms. Walker"), by and through her undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendants CVS PHARMACY, INC. and KIMBERLY HARRIS (hereinafter collectively referred to as "Defendants"), and alleges as follows:

**INTRODUCTION**

    1.     This employment discrimination case is about a well-recognized and internationally branded company who permitted its management team to subject its black, Jamaican-American employees to relentless racial and national origin based discrimination, harassment, and retaliation.

    2. Plaintiff Walker bring this action pursuant to 42 U.S.C. § 1981 ("Section 1981"), 29 U.S.C. § 2612 ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.,* the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), the Florida Civil Rights Act of 1992, §760.01, *et seq.*, Florida Statutes ("FCRA"), and the Miami-Dade Code of Ordinances 97-17, Article IV, Chapter 11A, *et seq.* ("MDCO").

    3. Plaintiff seeks monetary relief to redress the Defendants' unlawful employment practices

in violation of the above Federal, State, and local statutes. This action seeks to redress Defendants' deprivation of Plaintiff's personal dignity and her civil right to pursue equal employment opportunities.

4. At bottom, Defendants are liable for subjecting Plaintiff to a work environment rife with relentless, open acts of discrimination and retaliation.

## PARTIES

5. Plaintiff Carisa Walker ("Plaintiff" or "Ms. Walker") is an individual residing in Pembroke Pines, Florida.

6. Defendant CVS Pharmacy, Inc. ("CVS") is a foreign Rhode Island for profit corporation authorized to do business within the Florida.

7. At all times material, Defendant CVS owned and operated CVS Pharmacy, Store No. 5182, located at 8901 Miramar Parkway, Miramar, Florida 33025 ("Store No. 5182"). Defendant CVS also owned and operated CVS Pharmacy, Store No. 3607, located at 11100 Pine Boulevard, Pembroke Pines, Florida 33026 ("Store No. 3607").

8. At all material times, Defendant CVS was Plaintiff's sole employer.

9. The exact number of employees at the above entity/entities is unknown, but upon information and belief, the Defendant CVS employed more than the number statutorily required.

10. Defendant Kimberly Harris (hereinafter individually referred to as "Defendant Harris") is an individual female and is believed to reside in the state of Florida.

11. At all times material, Defendant Harris was and still is employed by Defendant CVS as a "CVS District Leader".

12. At all times material, Defendant Harris held supervisory authority over Plaintiff

with regard to her employment including but not limited to, the power to hire, fire, demote, promote, transfer, and discipline Plaintiff.

13.     At all times material to this action, Defendant CVS was both Plaintiff and Defendant Harris's employer.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  This action is authorized and instituted pursuant to 42 U.S.C. § 1981 and 29 U.S.C. § 2612.

15.     Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida.  The Defendants' business was and is still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE EXHAUSTION

16.     Plaintiff Walker has complied with all statutory prerequisites to file this action.

17.     On or about January 13, 2022, the Plaintiff dual-filed her charge for discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), and the Miami Dade County Commission on Human Rights ("MDCCHR") as against Defendant CVS alleging the facts as set forth herein.[1]

18.     On or about September 22, 2021, the EEOC issued the Plaintiff a Right to Sue Letter.

19.     Plaintiff commenced this action within ninety (90) days of receipt of the EEOC

---

[1] While Plaintiff Walker's Charge identifies Defendant Harris by name and in great detail, she is not listed as a "Defendant" as no such Administrative Requirement exists for Plaintiff's Claim under Section 1981.

Right to Sue Letter and after more than one-hundred eight (180) days since Plaintiff's charge was initially filed.

## STATEMENT OF MATERIAL FACTS

20.     Ms. Walker is a Jamaican American, Black woman residing in Pembroke Pines.

21.     Plaintiff began her employment with Defendant CVS in 1995, at which time the location wherein she worked was operating under the name "Eckerd Drugs."

22.     Beginning in 1995 and continuing through 2020, Defendant assigned Plaintiff to work at Store No. 5182, in Miramar, providing her decades of consistency and development.

23.     Over the course of her nearly three decades long employment, Plaintiff showed exemplary leadership with her co-workers, as well as undeniable interpersonal skills and sympathy in developing lasting relationships within the store's community.

24.     In or around the summer of 2019, CVS hired Defendant Harris to serve as the new District Leader. At this time, Plaintiff and her colleagues were directed to report to Defendant Harris as their supervisor.

25.     From the outset, Plaintiff noticed a clear and intentional agenda set into place by Defendant Harris, one designed with the outright purpose of disrupting the symbiotic relationship within Store No. 5182 and cause the most chaos.

26.     At all times after her placement as District Leader, Defendant Harris spoke in disrespectful, if not openly hostile, derogatory, and authoritarian, manner when engaging with her minority subordinates, in particular, those who were of Jamaican dissent.

27.     Defendant Harris would boast about her purpose being purely to target and fire Ms. Walker. Ms. Walker was baffled, unable to understand why she was suddenly the target of a near stranger.

28.     To further her agenda, Defendant Harris provided her personal cell phone number to the store cashiers, expressly encouraging, if not requiring, them to monitor Ms. Walker personally and call

Defendant Harris directly if a cashier's directive was not follower. By means of example and not meant to be and exhaustive list, Defendant Harris instructed the cashiers to report what shoes Ms. Walker wore each day.

29.    In or around 2019, when provided her annual review, Ms. Walker's direct Manager, Chavel Ow, provided Plaintiff with a strong and favorable evaluation in line with Plaintiff's own personal high standards.

30.    Despite having not personally managed or observed Plaintiff's performance, Defendant Harris required Ms. Ow to adjust her evaluation, falsely lowering Plaintiff's overall score. By means of example and not meant to be an exhaustive list, Ms. Ow was required to reduce Plaintiff's evaluation marks wherein she was marked as "Exceeds Expectations" and "Meets Expectations" uniformly to "Needs Improvement" without cause. Ms. Ow later advised Plaintiff that these changes were not merit based but rather solely due to Ms. Ow's own personal fear of repercussion by Defendant Harris.

31.    Furthermore, these changes were implemented at or around the time Plaintiff was out of work on sick leave and was unable to obtain an explanation as to the adjustment, let alone guidance on areas wherein she was expected to improve.

32.    None the less, Plaintiff persisted, striving to meet the unattainable goals as set by Defendant Harris.

33.    Furthermore, Defendant Harris took issue with Plaintiff's religious observance. Plaintiff is a devout Seventh Day Adventist, and as a result, observes a strict Sabbath on Saturday. As a result, since the time of her employment inception in 1995, Plaintiff's scheduled was adapted to ensure she was not working beginning early on Friday evenings (prior to sunset) and that she remained off for observance of Saturday.

34.    Despite this accommodation having been in place as business practice for over twenty years, Defendant Harris made it clear this would no longer be permitted. Defendant Harris advised Plaintiff that her religious observance was "not beneficial to the company."

35.     In or around March 2020, the global COVID-19 Pandemic crisis took a grip on society. As a result of the industry, Plaintiff and her colleagues became front line workers, working diligently to assist in any means possible in a time of uncertainty.

36.     Over the proceeding months, as the statistics shifted, guidance changed, and the world adapted, Defendant Harris persisted, seeking every opportunity to take issue with Plaintiff and her fellow minority colleagues.

37.     In October 2020, as the pandemic escalated in Florida and demand increased on the store, Defendant Harris illogically began cutting technician hours without explanation. This decision by Defendant Harris ran antithetical to corporate changes as Ms. Walker was keenly aware of the approval by the corporate headquarters to ensure *additional* hours and support to employees where necessary.

38.     As a result of the changes, Plaintiff was now required to work extensive hours alone, as well as many hours off the clock and without pay. On average, Plaintiff worked and additional 2-4 hours *per day without compensation* to ensure the store was able to provide necessary supports within the community, despite the unrealistic demands as set by Defendant Harris.

39.     Ms. Walker attempted to communicate her frustrations to Defendant Harris to no avail. With each request for additional support, Defendant Harris would summarily shut Ms. Walker down with a simple "that's how it is now," a passive "take it or leave it" message.

40.     As a result, Plaintiff would frequently open the store alone, serve patients in the drive thru as well as at the counter simultaneously, and frequently skip lunch and restroom breaks entirely as no coverage existed. Plaintiff was required to administer immunizations, flu shots, etc. all while having no support.

41.     All the while, Plaintiff colleagues made similar complaints as it related to their shifts, but Defendant Harris disregarded them at every turn, ignoring the impact she was having on the minority staff as well as outright putting the safety and health of their customers at risk.

42.     Simultaneously, as the burn out became unbearable, Plaintiff made numerous requests for vacation time to Defendant Harris. One at least ten separate occasions, Defendant Harris flatly denied these requests without cause. Per her employment history, Plaintiff was entitled up to four weeks paid vacation annually and one week of paid sick leave.

43.     Plaintiff would provide her vacation requests weeks if not months in advance, allowing Defendant Harris ample time to secure and adjust any necessary scheduling, but the requests were continuously denied.

44.     In or around the end 2020, Plaintiff advised Defendant Harris that her mother, who tragically was already wheelchair bound as a result of her Multiple Sclerosis diagnosis, had been diagnosed with Stage 4 Bone Cancer. Plaintiff was not only seeking understanding as she continued to ask for leave to support her mother but was additionally hoping that may she could connect with the human in Defendant Harris.

45.     This simply was unsuccessful. In fact, it had the exact opposite affect: Defendant Harris escalated.

46.     While corporate seemingly rubber-stamped Ms. Walker's request for leave under the Family and Medical Leave Act, Defendant Harris actively intervened, adjusting her schedule and ensuring her pay was denied.

47.     Plaintiff worked tirelessly and precisely, throwing herself into her work and customers with whom she had built strong personal relationships. She left each shift exhausted and in tears, knowing that each move she made endangered her pharmacy license and the lives of her patients, all facts Defendant Harris ignored.

48.     On or around November 20, 2020, in her continued effort to remove all minority staff, Defendant Harris unlawfully terminated Ms. Ow. As a result, Plaintiff no longer felt she had an ally, and her anxiety grew immensely. She knew she was next.

49.     As a result of the above termination, Defendant Harris was able to hire her preferred replacement, Mr. Barry Mar, a former pharmacist with a questionable performance history to say the least. Defendant Harris completely disregarded Plaintiff's tenure and strength of skill, refusing to even acknowledge her when discussing the replacement for Ms. Ow. Plaintiff, in addition to years of strong performance and reputation within the community, had training and experience both as a Pharmacy Manager and Pharmacy Trainer, skills essential to the open role.

50.     It took mere weeks for Mr. Mar to show his inability in the new role. On occasions wherein he could not meet the workload expectation, he would become hostile and threatening with staff, cursing, shoving computers, kicking the drawers, and angrily pounding his fists on the counter. His actions were public, despite the presence of staff and customers.

51.     Plaintiff and her colleagues reported this conduct to Defendant Harris repeatedly without any recourse taken. Mr. Mar persisted undeterred and without reprimand by his friends and former classmate.

52.     As with the cashiers, Mr. Mar began to boast of his responsibility, expressing to Plaintiff that he was instructed by Defendant Harris to "watch her closely." He would align his shifts with Ms. Walker's purely to monitor her every move and action but would refuse to provide functional supports. In fact, he would covertly and illegally record Plaintiff confidential communication with her customers. He further took pictures of Plaintiff mother's pharmacy profile without cause in direct violation of HIPPA and privacy laws.

53.     Mr. Mar would leave the store in shambles when he worked, knowingly Plaintiff was assigned to work the following day, causing delays in her work when she arrived. Again, she complained the Defendant Harris as to her being targeted to no avail.

54.     Ms. Walked would attempt to discuss the matter directly with Mr. Mar only to be called a "fucking bitch" and threatening to call Defendant Harris.

55.     Having hit her breaking point, Plaintiff formally contacted Defendant CVS's Human Resources department, yet no action was taken. Defendant failed to investigate Plaintiff report of discrimination and harassment (let alone the open HIPPA violations), instead permitting the conduct to persist.

56.     Plaintiff was left with disproportionate shift coverage. While Mr. Mar frequently was provided three support technicians by Defendant Harris to aid his ineptitude, Ms. Walker was left working alone.

57.     Again, seeing no change and feeling she was on the edge of a nervous breakdown, Plaintiff contacted Defendant Harris' supervisor, Mr. Ahmed Velez. In email, Plaintiff advised of the unlawful treatment to her, her colleagues and customers by Mr. Mar and Defendant Harris.

58.     In what was a clear pattern and should not have presented any surprise, Mr. Velez never responded. Instead, Defendant Harris responded, increasing her campaign of terror and harassment.

59.     Within five days of Ms. Walker's complaint to Mr. Velez, Defendant Harris issued Plaintiff a "Second to Final Write Up." Defendant Harris falsely asserted that Plaintiff had reported to shift late on nine separate occasions over the course of a three-month period, including within the cited dates numerous occasions on which Plaintiff was not even scheduled to work.

60.     Plaintiff was not issued a "First to Final Write Up" demonstrating an improper escalation by her manager.

61.     Defendant Harris thereafter required that Plaintiff provide Defendant Harris a copy of Plaintiff's "queue" each day via fax at the end of the shift so that Defendant Harris could monitor her work. Ignoring the backlog created by Mr. Mar, Defendant Harris stated that Plaintiff either send the queues or be fired like Ms. Ow. She stated, "that's how it is," shrugged her shoulders, and walked away seemingly proud of her own actions.

62.     In or around December 2020, after finally being permitted to take time off with her mother, Plaintiff returned to the store to see the code had been changed without her knowledge. Unaware

of the change, Plaintiff was required to contact the asset protection team to disarm the gate remotely. This was one occasion where Plaintiff was listed as "late" by Defendant Harris.

63.     Plaintiff thereafter met with Defendant Harris, the district manager, and the loss prevention manager. As they hovered over her, Plaintiff began to cry, feeling openly threatened and intimidated by their approach. Plaintiff felt as though she would be buried in their lies, ruining her twenty-six years of work and reputation.

64.     All the while, Mr. Mar openly walked around the store, falsely advising the technicians in the pharmacy that Plaintiff was in the process of being fired.

65.     As a result, Plaintiff felt she had no choice but to seek medical attention. Her anxiety and depression had become unbearable without medical support.

66.     After her medical leave, Plaintiff returned to the same patterns of threats and miss treatment by Mr. Mar and Defendant Harris.

67.     By means of example, Mr. Mar would refill narcotics prescriptions that Plaintiff had previously filed and then told patients and technicians that Plaintiff was the one who had caused the error in the narcotics count. Mr. Mar's actions were not only inappropriate as to Plaintiff but could also arguably be classified as a federal offense.

68.     Plaintiff reported the missing narcotics to Defendant Harris who in turn twisted the report and instructed another pharmacist to ignore the discrepancies.

69.     In or around January 2021, Defendant Harris approached Plaintiff without explanation and advised she was being moved to another location. After twenty-six years in this community, her ties were severed. Plaintiff took solace in the fact she was not terminated but feared the fall out to the community and the store.

70.     When asked about the transition, Defendant Harris advised it was a result of the missing narcotics caused by Plaintiff.

71.     On her last day in the store, to her surprise, Mr. Mar came to Ms. Walker and apologized about his horrible behavior and said it was a direct result of the instructions he was given by Defendant Harris. In fact, he advised that he had refrained from certain acts she instructed as he felt they were to "wicked."

72.     As their conversation ended, Mr. Mar stated that he knew the change was because of his unwillingness to carry out the actions instructed by Defendant Harris and that the store where she was being transferred was managed by someone more likely to do such, if not aid in setting Plaintiff up for termination.

73.     Plaintiff could no longer feign shock by his statement. She knew she was being targeted by Defendant Harris.

74.     Plaintiff was thereafter transferred to CVS Store No. 3607. After she started, Plaintiff was issued a secondary schedule where her hours were dramatically reduced.

75.     Additionally, Plaintiff was frequently watched on camera by her managers. In fact, Plaintiff was falsely accused of reconstituting medication, when in fact she had merely applied the new CVS policy and approach to filing prescriptions.

76.     On or around March 19, 2021, after years of harassment and unrelenting torment, Plaintiff was unlawfully terminated.

77.     Defendants unlawfully terminated Ms. Walker because of her race/color and because she opposed and complained about Defendants' unlawful employment practices.

78.     The above is just some of the examples of unlawful discrimination and retaliation Defendant subjected Plaintiff to on a continuous and on-going basis throughout her employment.

79.     Plaintiff was not the sole employee to feel the unlawful treatment. In addition to Plaintiff, an estimated four or five additional employees (either black and/or Jamaican) were subjected to similar unlawful treatment.

80.     Defendants unlawfully discriminated against Plaintiff because of her race/color, national, disability and because she opposed and complained about Defendants' unlawful employment practices perpetrated against Plaintiff and her colleagues because of their race/color and national origin.

81.     Thus, Defendants violated Section 1981, the FMLA, Title VII, the ADA, the FCRA, and the Miami-Dade County Ordinances by subjecting Plaintiff to unlawful discrimination, harassment, retaliation, and termination.

82.     Defendants should be accountable for its willful and knowing discriminatory employment practices directed at Plaintiff.

### CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1981
### Race Discrimination – Disparate Treatment
### (As against all Defendants)

83.     Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

84.     This is an action for discrimination and harassment because of Plaintiff Walker's race in violation of Section 1981. 42 U.S.C. §1981 states in relevant part as follows:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981.

85.     Plaintiff Walker is a black, Jamaican American and is therefore, a protected class member.

86.     The elements of a prima facie case of disparate treatment are flexible and are

tailored on a case-by-case basis to differing factual circumstances.

87. The Defendants subjected Plaintiff Walker to discriminatory treatment on the basis of her race.

88. The Defendants targeted Plaintiff Walker because she was black, Jamaican American. Plaintiff Walker was treated less favorably than her similarly situated counterparts.

89. As a result of the Defendants' disparate treatment, Plaintiff Walker suffered a "tangible employment action" defined as a significant change in employment status, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

90. The Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Walker to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

91. As a direct and proximate result of the Defendants' discriminatory conduct in violation of Section 1981, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

92. The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Walker's rights under Section 1981, warranting the imposition of

punitive damages in addition to compensatory damages.

93.    The conduct of the Defendants deprived Plaintiff Walker of her statutory rights

guaranteed under Section 1981.

**COUNT II**
**42 U.S.C. § 1981**
**Race Discrimination – Hostile Work Environment**
**(As against all Defendants)**

94.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

95.    This is an action for discrimination and harassment because of Plaintiff Walker's

race in violation of Section 1981. 42 U.S.C. §1981 states in relevant part as follows:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981.

96.    Plaintiff Walker is a black, Jamaican American and is therefore, a protected class

member.

97.    The Defendants regularly harassed Plaintiff Walker because of her race.

98.    Further, Plaintiff Walker was treated less favorably than her similarly situated

counterparts.

99.    The Defendants' discriminatory conduct was not welcomed by Plaintiff Walker.

On several occasions, Plaintiff Walker complained to Defendants, about the discriminatory

treatment she was forced to endure.

100.     The Defendants' discriminatory treatment was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating hostile or abusive.

101.     As a result of the hostile work environment, Plaintiff Walker suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

102.     The Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Walker to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

103.     As a direct and proximate result of the hostile work environment created by the Defendants, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

104.     The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Walker's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

105.     The conduct of the Defendants deprived Plaintiff Walker of her statutory rights guaranteed under Section 1981.

## COUNT III
### 42 U.S.C. § 1981
### Retaliation
### (As against all Defendants)

106.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

107.    Plaintiff Walker engaged in a protected activity when she opposed and reported the Defendants' unlawful discrimination.

108.    Plaintiff Walker complained of the discriminatory comments and conduct on multiple occasions to Defendants.

109.    In response to these complaints of race discrimination, the Defendants retaliated against Plaintiff Walker by subjecting her to even harsher and more strenuous work conditions, further escalating the discriminatory conduct targeted towards Plaintiff Walker, transferring Plaintiff, cutting her hours, and eventually unlawfully terminating Plaintiff Walker.

110.    The Defendants took the above-described materially adverse actions against Plaintiff Walker because of her protected activities.

111.    Any reasonable employee in Plaintiff Walker's position would be dissuaded from reporting discrimination if they knew that they would be subjected to the kind of treatment Plaintiff Walker was forced to endure.

112.    As a direct and proximate result of the Defendants' retaliatory conduct in violation of Section 1981, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages

113.     The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff Walker's rights under Section 1981, warranting the imposition of punitive damages in addition to compensatory damages.

114.     The conduct of the Defendants deprived Plaintiff Walker of her statutory rights guaranteed under Section 1981.

**COUNT IV**
**29 CFR § 825.220**
**FMLA – Interference**
**(As against Defendant CVS)**

115.     Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

116.     The FMLA provides eligible employees of covered employers with up to 12 workweeks of unpaid, job protected leave in a 12-month period for, specified health and caregiving reasons, including a serious health condition that makes the employee unable to perform the essential functions of her job, as well as pregnancy and caring for a new child. *29 U.S.C. §§ 2601 et seq*.

117.     A covered employer must provide FMLA benefits and protections to eligible employees and comply with their responsibilities under the FMLA and its regulations at *29 C.F.R. part 825*.

118.     At all relevant times, Plaintiff Walker was eligible employees of a covered employer with a qualifying medical condition and/or caregiving reason entitling them to the protections of the FMLA

119.     In or around 2020, Plaintiff Walker had been employed by the Defendant CVS for at least twelve months and had fulfilled more than 1,250 hours of service with the Defendants during that twelve-month period. Accordingly, Plaintiff Walker was an eligible employee under the FMLA. 29 U.S.C. § 2611.

120. The Defendant CVS violated the FMLA by interfering with, restraining and/or denying Plaintiffs' rights under the FMLA by, *inter alia*:

(a) Failing to comply with the general notice requirements under the FMLA;

(b) Failing to comply with the eligibility notice requirements under the FMLA;

(c) Failing to comply with the rights and responsibilities notice requirements under the FMLA;

(d) Failing to comply with the designation notice requirements under the FMLA;

(e) Failing to provide notice of a fitness-for-duty certification with the designation notice as required by the FMLA;

(f) Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her duties and return to work at the end of her FMLA leave;

(g) Retaliating against Plaintiff for asking for attempting to exercise her rights under the FMLA;

(h) Failing to provide Plaintiff with the proper FMLA forms and/or medical certifications;

(i) Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;

(j) Failing to have in place proper FMLA policies, procedures and compliance; and/or

(k) Otherwise violating the FMLA.

121. The Defendant CVS's violations of the FMLA were grossly negligent and/or willful.

122.    As a direct and proximate cause of Defendant CVS's willful violations of the FMLA, Defendant CVS's is liable for Plaintiffs' compensation and benefits lost by reason of the above violations, for other actual monetary losses sustained as a direct result of the Defendant CVS's violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiffs. *See 29 CFR 825.300 (e)*.

123.    As a result of Defendant CVS's intentional retaliatory conduct, Plaintiff Walker has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

124.    Plaintiff Walker further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT V**
**29 CFR § 825.220**
**FMLA – Retaliation**
**(As against Defendant CVS)**

125.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

126.    The FMLA protects employees from retaliation. The FMLA prohibits employers from retaliating against an employee for "having exercised or attempted to exercise FMLA rights" and using "the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c).

127.    At all relevant times, Plaintiff Walker was eligible employees of a covered employer with a qualifying medical condition and/or caregiving reason entitling them to the protections of the FMLA

128.    In or around 2020, Plaintiff Walker had been employed by the Defendant CVS

for at least twelve months and had fulfilled more than 1,250 hours of service with the

Defendants during that twelve-month period. Accordingly, Plaintiff Walker was an eligible

employee under the FMLA. 29 U.S.C. § 2611.

129.    In or around 2020, Plaintiff Walker was entitled to FMLA leave, and Defendants

were on notice of the Plaintiff's entitlement to FMLA leave.

130.    Additionally, the circumstances surrounding the Plaintiff's entitlement and use

of FMLA leave, and the Defendant CVS's retaliatory conduct, are sufficiently close in temporal

proximity to establish a causal connection.

131.    Defendant CVS violated the FMLA by retaliating and discriminating against

Plaintiffs for exercising their rights under the FMLA by, *inter alia*:

> (a) Retaliating against Plaintiff for attempting to exercise her rights under the
>
>      FMLA;
>
> (b) Failing to supervise and/or train its employees and supervisors on
>
>      compliance with the provisions of the FMLA;
>
> (c) Failing to have in place proper FMLA policies, procedures and compliance;
>
> (d) Transferring, demoting, and/or adjusting Plaintiff's job duties in response to
>
>      Plaintiff attempting to exercise her rights under the FMLA
>
> (e) Discharging and/or constructively discharging, suspending and/or
>
>      disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her
>
>      duties and return to work at the end of her FMLA leave; and/or
>
> (f) Otherwise violating the FMLA.

132.    Therefore, Defendant CVS retaliated against Plaintiff Walker for asserting her

rights under the FMLA.

133.    The Defendant CVS's violations of the FMLA were grossly negligent and/or willful.

134.    As a direct and proximate cause of Defendant CVS's willful violations of the FMLA, Defendant CVS's is liable for Plaintiffs' compensation and benefits lost by reason of the above violations, for other actual monetary losses sustained as a direct result of the Defendant CVS's violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiffs. *See 29 CFR 825.300 (e)*.

135.    As a result of Defendant CVS's intentional retaliatory conduct, Plaintiff Walker has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

136.    Plaintiff Walker further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VI**
**Title VII, 42 U.S.C. § 2000e-2(a)**
**Discrete Act – Race, Color, and National Origin**
**(As against Defendant CVS)**

137.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

138.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

139.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

140.    Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of [her] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide . . . training." 42 U.S.C. § 2000e-2(d).

141.    Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

142.    Plaintiff Walker is a black, Jamaican American and is therefore, a protected class member.

143.    The Defendant CVS subjected Plaintiff Walker to discriminatory treatment on the basis of her race.

144.    The Defendant CVS targeted Plaintiff Walker because she was black, Jamaican American. Plaintiff Walker was treated less favorably than her similarly situated counterparts.

145.    As a result of the Defendant CVS's disparate treatment, Plaintiff Walker suffered a "tangible employment action" defined as a significant change in employment status, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

146.    The Defendant CVS failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Walker to make a claim of harassment to higher

management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

147.    As a direct and proximate result of the Defendant CVS's discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

148.    The Defendant CVS's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Walker's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

149.    The conduct of the Defendant CVS deprived Plaintiff Walker of her statutory rights guaranteed under Title VII.

**COUNT VII**
**Title VII, 42 U.S.C. § 2000e-2(a)**
**Hostile Work Environment – Race, Color, and National Origin**
**(As against Defendant CVS)**

150.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

151.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

152.    An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

153.     Respondeat superior liability for the acts of non-supervisory employees exists

where "the defendant knew or should have known of the harassment and failed to take prompt

remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

154.     Employer liability for co-worker harassment also exists where "the employer

failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods.

Corp., 568 F.3d 100, 105 (3d Cir. 2009).

155.     Plaintiff Walker is a black, Jamaican American and is therefore, a protected class

member.

156.     The Defendant CVS regularly harassed Plaintiff Walker because of her race, color,

and/or national origin.

157.     Further, Plaintiff Walker was treated less favorably than her similarly situated

counterparts.

158.     The Defendant CVS's discriminatory conduct was not welcomed by Plaintiff

Walker. On several occasions, Plaintiff Walker complained to Defendant CVS, about the

discriminatory treatment she was forced to endure.

159.     The Defendant CVS's discriminatory treatment was severe or pervasive enough to

make any reasonable person of the same legally protected class believe that the conditions of

employment were altered, and that the working environment was intimidating hostile or abusive.

160.     As a result of the hostile work environment, Plaintiff Walker suffered a "tangible

employment action" defined as a significant change in employment status, failure to promote,

reassignment with significantly different responsibilities, and/or a decision causing a significant change in

benefits, including but not limited to unlawful termination of employment.

161.     The Defendant CVS failed to exercise reasonable care to prevent racial

harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Walker to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

162.    As a direct and proximate result of the hostile work environment created by the Defendants, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

163.    The Defendant CVS's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Walker's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

164.    The conduct of the Defendant CVS deprived Plaintiff Walker of her statutory rights guaranteed under Title VII.

**COUNT VIII**
**Title VII, 42 U.S.C. § 2000e-2(a)**
**Retaliation**
**(As against Defendant CVS)**

165.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

166.    Title VII protects employees from retaliation for attempting to exercise her rights under the Act:

167.    The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68

(2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

168.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

169.    Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

170.    Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

171.    "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899

F.2d 203, 209 (2d Cir. 1990), <u>overruled on other grounds</u> by <u>Miller v. CIGNA Corp.</u>, 47 F.3d

586 (3d Cir.1995); <u>see also</u> <u>Moore</u>, 461 F.3d at 341 (finding that a transfer of a police officer

from a district could constitute actionable retaliation because it "is the kind of action that might

dissuade a police officer from making or supporting a charge of unlawful discrimination within

his squad.").

172.    An employee need not be a member of a protected class to be subject to

actionable retaliation under Title VII. <u>See</u> <u>Moore</u>, 461 F.3d at 342 ("Title VII's whistleblower

protection is not limited to those who blow the whistle on their own mistreatment or on the

mistreatment of their own race, sex, or other protected class.")

173.    Title VII not only bars retaliation against the employee who engaged in the

protected activity; it also bars retaliation against another employee if the circumstances are such

that the retaliation against that employee might well dissuade a reasonable worker from engaging

in protected activity. <u>See</u> <u>Thompson v. North American Stainless, LP</u>, 131 S. Ct. 863, 868

(2011).

174.    Plaintiff Walker engaged in a protected activity when she opposed and reported

the Defendants' unlawful discrimination.

175.    Plaintiff Walker complained of the discriminatory comments and conduct on

multiple occasions to Defendant CVS.

176.    In response to these complaints of race discrimination, the Defendant CVS

retaliated against Plaintiff Walker by subjecting her to even harsher and more strenuous work

conditions, further escalating the discriminatory conduct targeted towards Plaintiff Walker,

transferring Plaintiff, cutting her hours, and eventually unlawfully terminating Plaintiff Walker.

177.    The Defendant CVS took the above-described materially adverse actions against

Plaintiff Walker because of her protected activities.

178.    Any reasonable employee in Plaintiff Walker's position would be dissuaded from reporting discrimination if they knew that they would be subjected to the kind of treatment Plaintiff Walker was forced to endure.

179.    As a direct and proximate result of the Defendant CVS's retaliatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages

180.    The Defendant CVS's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff Walker's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

181.    The conduct of the Defendants deprived Plaintiff Walker of her statutory rights guaranteed under Title VII.

**COUNT IX**
**ADA/ADAAA, Sec. 12203 [Section 503]**
**Retaliation**
**(As against Defendant CVS)**

182.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

183.    SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

184.    At all times relevant, Defendant CVS employees intended to unlawfully discriminate against Ms. Walker in their terms and conditions of her employment in violation of the ADA because she requested an accommodation and subsequently opposed a practice made unlawful by the ADA.

185.    And, as a result, Defendant CVS unlawfully retaliated against Ms. Walker because of that opposition.

186.    At all times relevant, Ms. Walker acted in good faith and with the objective and subjective belief that violations of the ADA by Defendant CVS's employees had occurred.

187.    Defendant CVS failed to properly investigate Plaintiff's complaints and failed to take appropriate corrective action.

188.    At all times material, Defendant CVS allowed the discriminatory practices to continue in the work environment.

189.    At all times relevant, the unlawful discrimination by Defendant CVS's employees against Ms. Walker in the terms and conditions of her employment because she opposed a practice made unlawful by the ADA which would not have occurred but for that opposition.

190.    At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant CVS.

191.    As a direct and proximate result of Defendant CVS's intentional retaliatory conduct in violation of the ADA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

192.    At all times relevant, Defendant CVS, by and through it's employees and agents, acted intentionally and with reckless disregard of Ms. Walker's rights protected by the ADA.

193.    Defendant CVS's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages in addition

to compensatory damages.

194.    Conduct of Defendant CVS and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

195.    Plaintiff has been damaged by the illegal conduct of Defendant CVS.

**COUNT X**
**FCRA, § 760.10(1)(a)**
**Discrete Act – Race, Color, and National Origin**
**(As against Defendant CVS)**

196.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

197.    This is an action for discrimination and harassment because of Plaintiff Walker's race, color and/or national origin in violation of FCRA.

198.    Plaintiff Walker is a black, Jamaican American and is therefore, a protected class member.

199.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

200.    The Defendants subjected Plaintiff Walker to discriminatory treatment on the basis of her race, color and/or national origin.

201.    The Defendants targeted Plaintiff Walker because she was black, Jamaican American. Plaintiff Walker was treated less favorably than her similarly situated counterparts.

202.    As a result of the Defendants' disparate treatment, Plaintiff Walker suffered a "tangible employment action" defined as a significant change in employment status, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

203.    The Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the

basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Walker to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

204.    As a direct and proximate result of the Defendants' discriminatory conduct in violation of FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

205.    The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Walker's rights under FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

206.    The conduct of the Defendants deprived Plaintiff Walker of her statutory rights guaranteed under FCRA.

**COUNT XI**
**FCRA, § 760.10(1)(a)**
**Hostile Work Environment – Race, Color, and National Origin**
**(As against Defendant CVS)**

207.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

208.    This is an action for discrimination and harassment because of Plaintiff Walker's race, color and/or national origin in  violation of FCRA.

209.    Plaintiff Walker is a black, Jamaican American and is therefore, a protected class member.

210.    The Defendants regularly harassed Plaintiff Walker because of her race, color

and/or national origin.

211.    Further, Plaintiff Walker was treated less favorably than her similarly situated counterparts.

212.    The Defendants' discriminatory conduct was not welcomed by Plaintiff Walker. On several occasions, Plaintiff Walker complained to Defendants, about the discriminatory treatment she was forced to endure.

213.    The Defendants' discriminatory treatment was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating hostile or abusive.

214.    As a result of the hostile work environment, Plaintiff Walker suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

215.    The Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Walker to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

216.    As a direct and proximate result of the hostile work environment created by the Defendants, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory

damages.

217.    The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Walker's rights under FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

218.    The conduct of the Defendants deprived Plaintiff Walker of her statutory rights guaranteed under FCRA.

**COUNT XII**
**FCRA, § 760.10(7)**
**Retaliation - Disability**
**(As against Defendant CVS)**

219.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

220.    This is an action retaliation violation of FCRA. The FCRA prohibits discrimination against an individual for opposing unlawful acts under the FCRA or for opposing or complaining about disability discrimination.  § 760.10(7), Fla. Stat. (2020).

221.    At all times relevant, Defendant CVS employees intended to unlawfully discriminate against Ms. Walker in their terms and conditions of her employment in violation of the ADA because she requested an accommodation and subsequently opposed a practice made unlawful by the ADA.

222.    And, as a result, Defendant CVS unlawfully retaliated against Ms. Walker because of that opposition.

223.    At all times relevant, Ms. Walker acted in good faith and with the objective and subjective belief that violations of the ADA by Defendant CVS's employees had occurred.

224.    Defendant CVS failed to properly investigate Plaintiff's complaints and failed to take appropriate corrective action.

225.    At all times material, Defendant CVS allowed the discriminatory practices to continue in the work environment.

226.    At all times relevant, the unlawful discrimination by Defendant CVS's employees against

Ms. Walker in the terms and conditions of her employment because she opposed a practice made unlawful by the ADA which would not have occurred but for that opposition.

227.    At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant CVS.

228.    As a direct and proximate result of Defendant CVS's intentional retaliatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

229.    At all times relevant, Defendant CVS, by and through its employees and agents, acted intentionally and with reckless disregard of Ms. Walker's rights protected by the FCRA.

230.    Defendant CVS's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

231.    Conduct of Defendant CVS and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

232.    Plaintiff has been damaged by the illegal conduct of Defendant CVS.

**COUNT XIII**
**FCRA, § 760.10(7)**
**Retaliation – Complaints of Discrimination**
**(As against Defendant CVS)**

233.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

234.    This is an action retaliation violation of FCRA. The FCRA prohibits discrimination against an individual for opposing unlawful acts under the FCRA or for opposing or complaining about race, color, and national origin discrimination.  § 760.10(7), Fla. Stat. (2020).

235.    Plaintiff Walker engaged in a protected activity when she opposed and reported the Defendants' unlawful discrimination.

236.    Plaintiff Walker complained of the discriminatory comments and conduct on multiple occasions to Defendants.

237.    In response to these complaints of race discrimination, the Defendants retaliated against Plaintiff Walker by subjecting her to even harsher and more strenuous work conditions, further escalating the discriminatory conduct targeted towards Plaintiff Walker, transferring Plaintiff, cutting her hours, and eventually unlawfully terminating Plaintiff Walker.

238.    The Defendants took the above-described materially adverse actions against Plaintiff Walker because of her protected activities.

239.    Any reasonable employee in Plaintiff Walker's position would be dissuaded from reporting discrimination if they knew that they would be subjected to the kind of treatment Plaintiff Walker was forced to endure.

240.    As a direct and proximate result of the Defendants' retaliatory conduct in violation of FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages

241.    The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff Walker's rights under FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

242.    The conduct of the Defendants deprived Plaintiff Walker of her statutory rights

guaranteed under FCRA.

### COUNT XIV
### MDCO 97, Art. IV, Sec. 11A-26(1)
### Discrete Act – Race, Color, and National Origin
### (As against Defendant CVS)

243.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

244.    This is an action for discrimination and harassment because of Plaintiff Walker's race, color and/or national origin in violation of MDCO.

245.    The MDCO prohibits employers from discriminating against the terms, conditions, or privileges of an individual's employment because of her race, color, and/or national origin.

246.    Ordinance 97-17, Article IV, Sec. 11A-26(1) states in relevant parts as follows:

> "It shall be unlawful for any employer to engage in any practices described below on account of the race, color, religion, ancestry, sex, pregnancy, national origin, age, disability, marital status, familial status, gender identity, gender expression, sexual orientation, or actual or perceived status as a victim of domestic violence, dating violence or stalking of any individual or any person associated with such individual: (a) To fail or refuse to hire or to otherwise discriminate against any individual…"

247.    Plaintiff Walker is a black, Jamaican American and is therefore, a protected class member.

248.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

249.    The Defendants subjected Plaintiff Walker to discriminatory treatment on the basis of her race, color and/or national origin.

250.    The Defendants targeted Plaintiff Walker because she was black, Jamaican American. Plaintiff Walker was treated less favorably than her similarly situated counterparts.

251.     As a result of the Defendants' disparate treatment, Plaintiff Walker suffered a "tangible employment action" defined as a significant change in employment status, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

252.     The Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Walker to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

253.     As a direct and proximate result of the Defendants' discriminatory conduct in violation of MDCO, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

254.     The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Walker's rights under MDCO, warranting the imposition of punitive damages in addition to compensatory damages.

255.     The conduct of the Defendants deprived Plaintiff Walker of her statutory rights guaranteed under MDCO.

**COUNT XV**
**MDCO 97, Art. IV, Sec. 11A-26(1)**
**Hostile Work Environment – Race, Color, and National Origin**
**(As against Defendant CVS)**

256.     Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

257.     This is an action for discrimination and harassment because of Plaintiff Walker's race, color and/or national origin in violation of MDCO.

258.     The MDCO prohibits employers from discriminating against the terms, conditions, or privileges of an individual's employment because of her race, color, and/or national origin.

259.     Ordinance 97-17, Article IV, Sec. 11A-26(1) states in relevant parts as follows:

> "It shall be unlawful for any employer to engage in any practices described below on account of the race, color, religion, ancestry, sex, pregnancy, national origin, age, disability, marital status, familial status, gender identity, gender expression, sexual orientation, or actual or perceived status as a victim of domestic violence, dating violence or stalking of any individual or any person associated with such individual: (a) To fail or refuse to hire or to otherwise discriminate against any individual…"

260.     Ordinance 97-17, Article IV, Sec. 11A-26(1) prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against, due to his or her gender, age, religion, national origin or race.

261.     Plaintiff Walker is a black, Jamaican American and is therefore, a protected class member.

262.     The Defendants regularly harassed Plaintiff Walker because of her race, color and/or national origin.

263.     Further, Plaintiff Walker was treated less favorably than her similarly situated counterparts.

264.    The Defendants' discriminatory conduct was not welcomed by Plaintiff Walker. On several occasions, Plaintiff Walker complained to Defendants, about the discriminatory treatment she was forced to endure.

265.    The Defendants' discriminatory treatment was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating hostile or abusive.

266.    As a result of the hostile work environment, Plaintiff Walker suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits, including but not limited to unlawful termination of employment.

267.    The Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiff Walker to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

268.    As a direct and proximate result of the hostile work environment created by the Defendants, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

269.    The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Walker's rights under MDCO, warranting the imposition of

punitive damages in addition to compensatory damages.

270.    The conduct of the Defendants deprived Plaintiff Walker of her statutory rights guaranteed under MDCO.

**COUNT XVI**
**MDCO 97, Art. IV, Sec. 11A-26(4)**
**Retaliation - Disability**
**(As against Defendant CVS)**

271.    Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

272.    This is an action retaliation violation of MDCO. The MDCO prohibits discrimination against an individual for opposing unlawful acts under the MDCO or for opposing or complaining about disability discrimination.

273.    Ordinance 97-17, Article IV, Sec. 11A-26(4) states:

> "It shall be unlawful employment practice for any employer to discriminate against any of his or her employees or applicants for employment, for an employment agency or similar organization to discriminate against any individual, or for a labor organization to discriminate against any member or applicant for membership because he or she has opposed any practice made unlawful by this article or because he or she has testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this article."

274.    The MDCO prohibits discrimination against an individual for opposing unlawful acts under the MDCO or for opposing or complaining about pregnancy discrimination. *Sec. 11A-26(4)*.

275.    At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Ordinance 97-17, Article IV, Sec. 11A-26(4) by Defendants' employees had occurred.

276.    At all times relevant, the unlawful discrimination by Defendants against Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made

unlawful by Ordinance 97-17, Article IV, Sec. 11A-26(4) which would not have occurred but for that opposition.

277.    At all times relevant, Defendant CVS employees intended to unlawfully discriminate against Ms. Walker in their terms and conditions of her employment in violation of the ADA because she requested an accommodation and subsequently opposed a practice made unlawful by the ADA.

278.    And, as a result, Defendant CVS unlawfully retaliated against Ms. Walker because of that opposition.

279.    At all times relevant, Ms. Walker acted in good faith and with the objective and subjective belief that violations of the ADA by Defendant CVS's employees had occurred.

280.    Defendant CVS failed to properly investigate Plaintiff's complaints and failed to take appropriate corrective action.

281.    At all times material, Defendant CVS allowed the discriminatory practices to continue in the work environment.

282.    At all times relevant, the unlawful discrimination by Defendant CVS's employees against Ms. Walker in the terms and conditions of her employment because she opposed a practice made unlawful by the ADA which would not have occurred but for that opposition.

283.    At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant CVS.

284.    As a direct and proximate result of Defendant CVS's intentional retaliatory conduct in violation of the MDCO, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

285.    At all times relevant, Defendant CVS, by and through its employees and agents, acted intentionally and with reckless disregard of Ms. Walker's rights protected by the MDCO.

286.     Defendant CVS's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the MDCO, warranting the imposition of punitive damages in addition to compensatory damages.

287.     Conduct of Defendant CVS and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

288.     Plaintiff has been damaged by the illegal conduct of Defendant CVS.

**COUNT XVII**
**MDCO 97, Art. IV, Sec. 11A-26(4)**
**Retaliation – Complaints of Discrimination**
**(As against Defendant CVS)**

289.     Plaintiff reincorporates the factual allegations in the previous paragraphs 20-82.

290.     This is an action retaliation violation of MDCO. The MDCO prohibits discrimination against an individual for opposing unlawful acts under the MDCO or for opposing or complaining about race, color, and national origin discrimination.

291.     Ordinance 97-17, Article IV, Sec. 11A-26(4) states:

> "It shall be unlawful employment practice for any employer to discriminate against any of his or her employees or applicants for employment, for an employment agency or similar organization to discriminate against any individual, or for a labor organization to discriminate against any member or applicant for membership because he or she has opposed any practice made unlawful by this article or because he or she has testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this article."

292.     The MDCO prohibits discrimination against an individual for opposing unlawful acts under the MDCO or for opposing or complaining about pregnancy discrimination. *Sec. 11A-26(4)*.

293.     At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Ordinance 97-17, Article IV, Sec. 11A-26(4) by Defendants'

employees had occurred.

294.    At all times relevant, the unlawful discrimination by Defendants against Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by Ordinance 97-17, Article IV, Sec. 11A-26(4) which would not have occurred but for that opposition.

295.    Plaintiff Walker engaged in a protected activity when she opposed and reported the Defendants' unlawful discrimination.

296.    Plaintiff Walker complained of the discriminatory comments and conduct on multiple occasions to Defendants.

297.    In response to these complaints of race discrimination, the Defendants retaliated against Plaintiff Walker by subjecting her to even harsher and more strenuous work conditions, further escalating the discriminatory conduct targeted towards Plaintiff Walker, transferring Plaintiff, cutting her hours, and eventually unlawfully terminating Plaintiff Walker.

298.    The Defendants took the above-described materially adverse actions against Plaintiff Walker because of her protected activities.

299.    Any reasonable employee in Plaintiff Walker's position would be dissuaded from reporting discrimination if they knew that they would be subjected to the kind of treatment Plaintiff Walker was forced to endure.

300.    As a direct and proximate result of the Defendants' retaliatory conduct in violation of MDCO, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Walker has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Walker accordingly demands lost economic damages, lost wages,

back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages

301.    The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Plaintiff Walker's rights under MDCO, warranting the imposition of punitive damages in addition to compensatory damages.

302.    The conduct of the Defendants deprived Plaintiff Walker of her statutory rights guaranteed under MDCO.

## JURY DEMAND

Plaintiff Walker hereby demands a jury trial of all issues so triable pursuant to § 760.11(5), Florida Statutes.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests this Court enter judgment against the Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of Section 1981, the FMLA, Title VII, the ADA/ADAA, the FCRA, and MDCO.

Dated: Miami, Florida                         **DEREK SMITH LAW GROUP, PLLC**
       November 7, 2022

                                     Caroline H. Miller, Esq.
                                     701 Brickell Ave., Suite 1310
                                     Miami, Florida 33131
                                     P: (305) 946-1884
                                     caroline@dereksmithlaw.com
                                     *Attorneys for Plaintiff*